**HOFLAND & TOMSHECK**
Joshua Tomsheck, Esq.
Nevada State Bar No. 9210
josht@hoflandlaw.com
228 South Fourth Street, 1st Floor
Las Vegas, Nevada 89101
Telephone:  (702) 895-6760
Facsimile:  (702) 731-6910
Attorney for Defendant Ocadiz-Castro

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>       vs.<br><br><br>SEBASTIAN OCADIZ-CASTRO,<br><br>              Defendant | Case No.: 2:20-cr-00156-RFB-DJA-4 |

**MOTION FOR RETURN OF PROPERTY PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 41(G)**

**THIS COURT SHOULD ORDER THE GOVERNMENT TO RETURN THE CASH SEIZED FROM MR. OCADIZ-CASTRO'S RESIDENCE, MINUS THE $3,300 FORFEITURE AMOUNT TO WHICH HE AGREED, BECAUSE THAT PROPERTY IS NOT TIED TO CRIMINAL ACTIVITY AND NO LONGER POSSESSES EVIDENTIARY VALUE**

**A.      Introduction**

The government cannot confiscate and retain private property without a legal basis. Rule 41(g) of the Rules of Criminal Procedure provides a mechanism where an individual may seek the return of property the government has lawfully seized by a valid search warrant, but is not longer needed as evidence.  If that property is not subject to forfeiture or retention as a criminal instrumentality, and the evidentiary value of that property is no longer apparent because the case has completed, the government must return the property.

The "property" at issue in the case at bar are $24,167 cash proceeds the government found in Mr. Ocadiz-Castro's residence on July 14, 2020, after the execution of a valid search warrant.[1]  (*See* Presentence Investigation Report, June 26, 2023 version [hereinafter PSR] at 17, ¶ 94.)[2]  Mr. Ocadiz-Castro does not challenge the legality of that seizure.  Rather, he maintains that under Rule 41(g), he has been "aggrieved" by the government's retention of those funds because they are not the product of unlawful activity or subject to forfeiture.[3]

**B.      Procedural and Factual History**

This truncated rendition of the factual and procedural history of this matter is intended to highlight two key points.  First, that the prosecution phase of the case is completed thereby reducing the government's interest in retaining the seized cash for its evidentiary value; and 2) Establishing the cash proceeds the government seized from Mr. Ocadiz-Castro are not the proceeds of criminal activities.

### 1).      *The Indictment*

This instant prosecution began on July 8, 2020, when the United States Attorney for the District of Nevada filed a criminal Indictment alleging multiple counts of illegal firearm

---

[1] Federal Rule of Criminal Procedure 41(a)(2)(A) defines property as "documents, books, papers, any other tangible objects, and information."  While the definition does not explicitly include cash, court routinely assume that cash constitutes "property" for the purposes of the Rule.  *See, e.g., Adeleke v. United States*, 355 F.3d 144, 148 (2d Cir. 2004) (explaining that, after defendant Adeleke filed a Rule 41(g) motion, the returned $1,000 in cash it had seized from him).

[2] The PSR states the search occurred on July 8, 2020.  A Report of Investigation from the ATF contained in the discovery lists the date as July 14, 2020.  Mr. Ocadiz-Castro is operating under the assumption that the July 14, 2020 date is the correct one.

[3] As part of his written plea agreement, Mr. Ocadiz-Castro has agreed to forfeit $3,300 in proceeds he obtained from the criminal activity to which he pleaded.  (*See* ECF No. 334 at 13, ¶ 28(a).)  Should this Court order the government to return the cash it seized from Mr. Ocadiz-Castro, the government is entitled, without question, to retaining the $3,300 that this Court has ordered Mr. Ocadiz-Castro forfeit.  (*See also* ECF No. 506 (final proposed order of forfeiture).)

and drug sales.  (*See* ECF No. 1.)  There are twenty counts in the Indictment of which Mr. Ocadiz-Castro is named in four.  In Count Two the government alleges Mr. Ocadiz-Castro and eleven other codefendants were involved in a conspiracy, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii), to distribute fifty grams or more of methamphetamine.  (*See id.* at 14-15.)  Count Three accuses Mr. Ocadiz-Castro and two codefendants of Dealing in Firearms Without a License, a violation of 18 U.S.C. §§ 921(a)(1)(A), 923(a), and 924(a)(1)(D).  (*See id.* at 15-18.)  Count Four alleges Mr. Ocadiz-Castro and codefendant Escalante-Trujillo sold, on July 11, 2019, five or more grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(B)(viii).  (*See id.* at 19.)  Finally, Count Five alleges another sale of five grams or more of methamphetamine, occurring on July 18, 2019, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(B)(viii).  (*See id.*)

### 2).  *After Extensive Litigation, this Court Releases Mr. Ocadiz-Castro from Pretrial Detention*

Bail proceedings are important to this Motion because those proceedings established that the funds seized from Mr. Ocadiz-Castro's residence by law enforcement on July 8, 2020, where lawfully acquired.

Mr. Ocadiz-Castro made an initial appearance on the aforementioned Indictment on July 15, 2020.  (*See* ECF No. 35 (minutes of proceeding).)  The magistrate court ordered Mr. Ocadiz-Castro detained pending trial.  (*See id*.; *see also* ECF No. 68 (Order of Detention).)

On August 8, 2020, Mr. Ocadiz-Castro moved to reopen detention proceedings.  (*See* ECF No. 94.)  In that pleading, Mr. Ocadiz-Castro noted two issues of significance.  First, the government conceded during the initial detention proceeding that Mr. Ocadiz-Castro is not a member of MS-13.  (*See id.* at 3.)  Second, one of the primary bases for detaining Mr. Ocadiz-Castro was the law enforcement's discovery of $24,167 in his residence.  (*See* PSR 17, ¶ 94.)

The existence of a large amount of cash in Mr. Ocadiz-Castro's residence is a legitimate source of concern.  Yet in his bail proceeding filings, Mr. Ocadiz-Castro was able

to establish, with documentary evidence, that he had just acquired a personal loan for $10,000 to start car washing business and was in the process of properly licensing the business; an endeavor impeded by the COVID pandemic.  (*See* ECF No. 94 at 9-11; *see also* attached Exhibits (Ex.) B, H.)[4]  Mr. Ocadiz-Castro also sold two vehicles for $9,920 cash to generate more funds to start his business.  (*See id.* Ex. C, D.)  While it may seem unusual to hold that much money, Mr. Ocadiz-Castro's experience was that he received better prices for the items he needed to start his business if you paid with cash.  (*See id.* at 10.)  The funds also contained some family savings which were comingled.  (*See id.*)

Hence, the funds found by law enforcement can be directly traced to legal sources.[5]

On September 21, 2020, the magistrate court denied Mr. Ocadiz-Castro's Motion to Reopen Detention proceedings because the new information was reasonably available to him at the time of the initial detention proceeding.  (*See* ECF No. 142, at 4-5.)

Mr. Ocadiz-Castro asked this Court to review that detention order on October 2, 2020.  (*See* ECF No. 145.)  Again, in that pleading, Mr. Ocadiz-Castro stressed and proved the funds were acquired from lawful sources.  The government opposed the effort.  (*See* ECF No. 152.)

On January 14, 2021, this Court held a hearing where it ordered Mr. Ocadiz-Castro released.  (*See* ECF No. 170.)  At that time, Mr. Ocadiz-Castro had spent approximately six months in custody.

This Court's order releasing Mr. Ocadiz-Castro sets the groundwork for this Motion.  The extensive Bail Reform Act litigation has already demonstrated that the funds in question are not the product of criminal activity.

---

[4] Mr. Ocadiz-Castro has attached these exhibits to the instant pleading for the Court's convenience.

[5] Further, the firearm and ammunition found during law enforcement's search of Mr. Ocadiz-Castro's home was lawfully acquired from a federal firearm licensed dealer after a requisite background checks.  (*See* ECF No. 94 at 11; *see also id.* Ex. J.)  Given Mr. Ocadiz-Castro is now a convicted felon, however, he does not seek return of those items.

### 3).    *Guilty Plea and Sentencing*

On February 24, 2023, Mr. Ocadiz-Castro pleaded guilty pursuant to a written plea agreement to an amended charge.  (*See* ECF No. 341 (minutes of proceeding).)   The Superseding Criminal Information to which he pleaded contains one count of Conspiracy to Distribute a Controlled Substance in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(C) & 846.  (*See* ECF No. 332.)  This count does not carry a mandatory minimum sentenced.  *See* 21 U.S.C. § 841(b)(1)(C) (2018) (imposing a maximum sentence of twenty-years).

The portion of the plea agreement relevant to this action describes how Mr. Ocadiz-Castro agrees to forfeit $3,300 in cash proceeds obtained from illicit sales.  (*See id.* ¶ 28(a).)  This forfeiture amount, which Mr. Ocadiz-Castro must pay singularly, is consistent with recent decisions limited the scope of criminal liability to funds an individual actual obtains. (*See id.* § 28(b) (citing *Honeycutt v. United States*, 137 S.Ct. 1626 (2017), and *United States v. Thompson*, 990 F.3d 680 (9th Cir. 2021)).)

Other than the forfeiture agreement, the written plea agreement does not contain provisions relevant to the instant Motion.  Mr. Ocadiz-Castro had both pre and post plea discussion with the government about this Motion.  It is not Mr. Ocadiz-Castro's intent to breach the plea agreement and he does he believe the government will perceive the instant Motion as violating the terms of that agreement.

On September 15, 2023, this Court sentenced Mr. Ocadiz-Castro to a six-month, time-served, sentence with three-years of supervised release.  (*See* ECF No. 509 (minutes).)   Mr. Ocadiz-Castro agrees with that sentence and has no intention of filing a notice of appeal from the forthcoming written criminal judgment.  He has received the full benefit of his bargain which the government honorably stood by.

Mr. Ocadiz-Castro seeks return of the funds for reasons that are consistent with his acceptance of responsibility and efforts to rehabilitate.  First, some of the funds were the property of his family members.  Second, Mr. Ocadiz-Castro acquired the majority of the

funds by taking out a personal loan that he still must pay.  Finally, the funds will allow Mr. Ocadiz-Castro to further establish his car-washing business thereby allowing him to support himself and assist his family.

Mr. Ocadiz-Castro respectfully asks this Court to order the government to return the funds it seized from his residence on July 8, 2020, minus $3,300, the amount he agreed to forfeit.

**C.    The Government Should Return $20,867 of the $24,167 in Cash it Seized from Mr. Ocadiz-Castro's Residence Because the Funds are Not Subject to Forfeiture and, Given this Court has Convicted and Sentenced Mr. Ocadiz-Castro, the Cash No Longer has Evidentiary Value**

In our constitutional system, "[g]overnment confiscation of private property is disfavored." *United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1068 (9th Cir. 1994). Rule 41 of the Federal Rules of Criminal Procedure, however, permits the government to apply for a judicial warrant authorizing the temporary seizure of property pending investigation and adjudication.  *See United States v. Wright*, 49 F.4th 1221, 1225 (9th Cir. 2022).

Rule 41(g) provide relief when the government seizes property that is not otherwise subject to forfeiture and that it no longer needs.  It reads:

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion.

Fed. R. Crim. P. 41(g).

The section provides two grounds for requesting the return of property.  First, "[a] person aggrieved by an unlawful search and seizure of property . . .may move for the property's return." *Id.*  Second, "[a] person aggrieved . . . by the deprivation of property may move for the property's return." *Id.*

The case at bar involves the latter clause.  Mr. Ocadiz-Castro is not alleging the search warrant seizure of the cash in question was unlawful.  The Motion is based on the fact the cash is question is not the product of unlawful activity.  Hence it is not subject to forfeiture.

In fact, a final forfeiture amount of $3,300 has been agreed to by the parties.  Hence, the property at issue consists of the original $24,167 seized by law enforcement minus the $3,300 in forfeiture proceeds to which Mr. Ocadiz-Castro agreed.  The total amount of cash at issue is **$20,867.**[6]

It is true that even property that is not the fruits or instrumentality of criminal conduct can have evidentiary value.  If the government needs the property for evidentiary purposes, either because investigation is ongoing or trial is imminent, "the movant bears the burden of proving both that the [property's] seizure was illegal and that he or she is entitled to lawful possession of the property."  *United States v. Martinson*, 809 F.2d 1364, 1369 (9th Cir. 1987).  But the burden shifts once criminal proceedings conclude or the government abandons its investigation. *See, e.g., United States v. Mills*, 991 F.2d 609, 612 (9th Cir. 1993).  The government must prove a legitimate reason to retain the property.  *See United States v. Harrell,* 530 F.3d 1051, 1057 (9th Cir. 2008); *cf. Martinson*, 809 F.2d at 1369 n.4 ("because the government no longer has an evidentiary need for the guns, [the movant] no longer bears the burden of demonstrating that he is entitled to lawful possession").

The timing of the 41(g) Motion also matters.  When there are no federal criminal proceedings pending when a Rule 41(g) motion is filed, the motion is treated as a civil complaint governed by the Federal Rules of Civil Procedure.  *See United States v. Ritchie*, 342 F.3d 903, 906-07 (9th Cir. 2003).  Generally, however, a Rule 41(g) motion is brought in

---

[6] There are complications that arise when property is seized by state authorities.  Federal courts have jurisdiction to consider a Rule 41(g) motion brought against the federal government only if: (1) the federal authorities gained actual possession of the property; (2) the federal authorities had constructive possession of the property for use as evidence in a federal prosecution; or (3) the state officials acted at the direction of the federal authorities in an agency capacity when seizing the property.  *See Clymore v. United States*, 164 F.3d 569, 571 (10th Cir. 1999).

Mr. Ocadiz-Castro does not anticipate this complication being an issue in the case at bar where the search warrant is federal and was executed by Homeland Security Investigation personnel.

connection with an ongoing criminal proceeding in which the property was seized for use or consideration as evidence. *See Ramsden v. United States*, 2 F.3d 322, 324 (9th Cir. 1993).

Mr. Ocadiz-Castro carefully timed the filing of this Motion. First, it was important to file it while the matter was still a criminal matter. Conversely, however, as described above, the burden of proof on a Rule 41(g) motion "depends on when the defendant files the motion." *United States v. Gladding*, 775 F.3d 1149, 1152 (9th Cir. 2014). Because Mr. Ocadiz-Castro has pleaded guilty and been sentenced, it is presumed he is entitled to property.

The only complication is whether the government can meet its burden of demonstrating a legitimate reason to retain the property. *See United States v. Wright*, 49 F.4th 1221, 1225 (9th Cir. 2022). There are three ways to government could meet this burden. First, the government may establish the property is contraband. *See Gladding*, 775 F.3d at 1152. Second, the government may establish the property is subject to forfeiture. *See id.*

Finally, the government may rebut the presumption that the defendant is entitled to lawful possession of the property. *See United States v. Van Cauwenberghe*, 827 F.2d 424, 433-34 (9th Cir. 1987). To overcome the presumption, the government must demonstrate a "cognizable claim of ownership or right to possession adverse to that of the [movant]." *Van Cauwenberghe,* 934 F.2d at 1061 (quoting *United States v. Palmer*, 565 F.2d 1063, 1065 (9th Cir. 1977)).

For instance, in *United States v. Wright*, the government established a legitimate interest in retaining the money in question because it was stolen. *See* 49 F.3d at 1226. By contrast, Mr. Ocadiz-Castro, although he does not bear the burden, has proved the funds in question are from legitimate sources. The parties have agreed that only a portion of the funds—$3,300—is subject to forfeiture. Therefore, the only argument the left to the government is its interest in the evidentiary value of the funds.

That interest is a real but one that is operative only why the guilt-phase of a criminal prosecution is pending. Here, that interest is limited because Mr. Ocadiz-Castro has pleaded guilty and been sentenced. *See United States v. Kriesel*, 720 F.3d 1137, 1144 (9th Cir. 2013) (explaining that a "defendant's Rule 41(g) motion should presumptively be granted if the

government no longer needs the property for evidence." (internal quotation marks and citation omitted)).   To further address the concern, Mr. Ocadiz-Castro agrees that the return of his property should await the expiration of the notice of appeal deadline.  This will occur fourteen days after this Court enters its written judgment.  *See* Fed. R. App. P. 4(b)(1)(A)(i).  Moreover, Mr. Ocadiz-Castro affirmatively agrees to enter a stipulation that, should his conviction be overturned for any reason and the matter proceed to trial, the fact the government seized $24,167 from his residence would be admissible during that trial.

These considerations should address any concerns the government may have about the lose of evidentiary value in the funds should this Court order them returned to Mr. Ocadiz-Castro.

## CONCLUSION

The government is entitled to preserve evidence it lawfully collects in order to facilitate its ability to meet its burden of proof in criminal matters.  That concern no longer exists in the case *sub judice* because the government has successfully secured a conviction and sentence against Mr. Ocadiz-Castro pursuant to a written plea agreement.  Since, under these unusual set of facts, Mr. Ocadiz-Castro can establish that property in question is not contraband or subject to forfeiture, he is entitled to the return of that property.

For these reasons, in the interests of fairness, justice, and equity, Defendant Sebastian Ocadiz-Castro respectfully requests that this Court order the government to return **$20,867** to him as is practical.

Dated: September 19, 2023.

**IT IS SO ORDERED:**

_____
RICHARD F. BOULWARE, II
United States District Judge
Dated 10/3/2024

HOFLAND & TOMSHECK
*/s/ J. Tomsheck*
_____
Joshua Tomsheck, Esq.
Nevada State Bar No. 9210
josht@hoflandlaw.com
228 South Fourth Street, 1st Floor
Las Vegas, Nevada 89101
Attorney for Defendant

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**CERTIFICATE OF SERVICE**

I hereby certify that on September 19, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States District Court, District of Nevada by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system and include: AUSA Jacob Operskalski.

I further certify that the Defendant, Mr. Ocadiz-Castro, is not a registered CM/ECF users. I will ensure that this office provides Mr. Ocadiz-Castro with a copy of this pleading at or about the time of filing.

*/s/ Sarah Daniels*
An Employee of Hofland & Tomsheck

# EXHIBIT A

# EXHIBIT A

















# EXHIBIT B

# EXHIBIT B

**Loan Agreement and Promissory Note**

Date of Loan: March 02, 2020                                                                                           Loan No.: 69760

**Lender/Creditor:**                                                                                                    **Borrower:**
Banco Popular de Puerto Rico                                                                                            SEBASTIAN OCADIZ CASTRO
c/o Avant as agent for Eloan                                                                                            8793 FRASURE FALLS,
222 N. LaSalle St., Suite 1700                                                                                          LAS VEGAS, NV 89178
Chicago, IL 60601

# FEDERAL TRUTH IN LENDING ACT ("TILA") DISCLOSURES

| **ANNUAL PERCENTAGE RATE** The cost of your credit as a yearly rate. **20.53%** | **FINANCE CHARGE** The dollar amount the credit will cost you. **$3476.61** | **Amount Financed** The amount of credit provided to you or on your behalf. **$10000.00** | **Total of Payments** The amount you will have paid after you have made all payments as scheduled. **$13476.61** |
|---|---|---|---|

**Payment Schedule:** You must make 35 monthly payments of $374.34, with the first payment due on Saturday, April 04, 2020, and each subsequent payment due on the same day of each month thereafter, and a final payment of $374.71 plus any unpaid fees, charges, and interest due on Saturday, March 04, 2023.

**Security:** Your Payment Authorization as set forth in Section 3(b) of this Note secures repayment.

**Late Fee:** If a payment is not paid in full within 15 days after its due date, you will be charged 5% of late installment amount.

**Prepayment:** If you pay off early, either in full or partially, you will not have to pay a penalty.

See the remainder of this Note for any additional information about nonpayment, default, and any required repayment in full before the scheduled date.

## Itemization of Amount Financed

The Amount Financed of $10000.00 is calculated as follows:

      $10000.00 Principal Loan Amount

      **$10000.00** Amount Financed

$10000.00 of Amount Financed is given to you directly

$0.00 of Amount Financed is paid with respect to an existing Eloan loan for which you are the sole borrower (Existing Payoff Amount)

## ADDITIONAL PROVISIONS

**1. Parties, Status of Application; Further Steps Before Approval and Funding of Loan.**

Banco Popular de Puerto Rico, an FDIC-insured, Federal Reserve member bank headquartered in San Juan, Puerto Rico, identified above as Lender/Creditor ("Banco Popular de Puerto Rico" or "Eloan") is the lender of this loan (the "Loan" or "Debt"). In this Loan Agreement and Promissory Note ("Note," "Agreement" or "Contract"), the words "you," "your" and "Borrower(s)" mean the Borrower(s) identified above. The words "we," "us," "our" mean Banco Popular de Puerto Rico, and after consummation any person who obtains Banco Popular de Puerto Rico's rights in this Note. We have not yet committed to make the Loan. We will only be committed to make the Loan if and when we initiate, in Puerto Rico, a transfer of funds from our offices in Puerto Rico to the bank account you identify for this purpose in the process of applying for the Loan or in connection with the Existing Payoff Amount referenced above to another account on your behalf. Any of our rights, actions, privileges or obligations which are permitted or required to be determined or performed hereunder may be determined or performed by our service provider and such determinations or actions shall have the same effect as if taken by us.

**2. Loan Proceeds; Promise to Pay; Interest.**

If all conditions to funding the Loan are met (see Section 1) and the Loan is funded: (a) $10000.00 of the Amount Financed will be deposited into Your Bank Account as defined below and $0.00 of the Amount Financed is paid with respect to your existing loan serviced by Avant, LLC ("Avant") and (b) you promise to pay to us (i) the Principal Loan Amount of $10000.00; (ii) simple interest, which accrues daily on the outstanding principal balance, from March 04, 2020 until the date the Loan is paid in full, at the daily rate of 0.05613699%; and (iii) any and all other amounts that become due and payable under this Note (collectively, the "Debt").

**3. (a) Note Payments; Application of Payments.**

This Note is payable in accordance with the following payment schedule (the "Payment Schedule") in 36 substantially equal monthly installments, including (i) 35 payments of $374.34, commencing Saturday, April 04, 2020; and (ii) a single final payment of the remaining amount outstanding under the Loan, payable one month later (the "Maturity Date"). On the Maturity Date, you shall also be responsible for paying any outstanding fees, charges, and interest. Payments will be due on the same day of every month (such day of the month, or such

other day of the month as you and we shall mutually agree in the future, being the "Monthly Due Date"). However, if you subsequently terminate authorization for the payment method selected below, you may choose to repay by either of the options below in the Section 3(b) Payment Authorization as well as any other reasonable form of payment that we permit including but not limited to paper check. We have based the Payment Schedule on the assumption that you will pay all payments as scheduled. If any payment is scheduled on a date we are not open for business, then you agree to pay us on the next business day, and if such amount is paid on such next business day, we will credit such payment as if we received it on the applicable Monthly Due Date. Payments will be applied first to outstanding fees, if any, then to accrued interest, and then to principal. On the Maturity Date, any unpaid Debt will be payable in full. Unless modified by both you and us, the final required payment will likely vary somewhat from prior required payments due, among other things, early payments or paying more than scheduled, and late payments. If your payment history causes the interest owing to be less than the above Payment Schedule, we will adjust your final payoff payment to reflect such decrease. If your payment history causes the interest owing to be more than the above Payment Schedule or if any unpaid Debt remains after the Maturity Date, then interest will continue to accrue on the outstanding principal balance at the daily rate set forth above in Section 2 of this Agreement until your obligations, including outstanding principal balance, are paid in full.

**3. (b) Payment Authorization.**

The payment method checked below is based on the payment method you selected during the application process. You understand that we will process your payments provided for under this Agreement by the method checked below, which gives you convenience and gives us security that payments will be received on time. However, if you subsequently terminate authorization for the payment method selected below you may choose to repay by any other reasonable form of payment that we permit, including but not limited to mailing a paper check. Please note that any payment sent via physical means will be effective on the business day it is received. If you terminate authorization for the payment method selected below and you would like to make payment by other means, you may contact us by communicating with Avant, as agent for Eloan, at 855-854-9395 or support@my.eloan.com.

X **Direct ACH Debit.** By selecting the Direct ACH Debit option, you hereby authorize us to initiate an electronic debit to the bank account you elect for this purpose during the application process, or any substitute account you later specify, hereinafter called "Your Bank Account," at the depository financial institution you identify, hereinafter called "Depository." You authorize us to electronically debit Your Bank Account in accordance with these provisions for amounts due and owing on or after each scheduled Monthly Due Date in the Payment Schedule and any payment date included in any payment plan agreed to by you and us ("Payment Plan"), as well as for other amounts and dates as provided in the provisions below.

**Your Bank Account Information.** If there is any missing or erroneous information regarding Depository or Your Bank Account, then you authorize us to verify and correct the information. You promise that the information that you provide to us relating to Your Bank Account corresponds to a legitimate, open and active account of which you are an owner and that you have the right to initiate (and to authorize us to initiate) electronic debits from Your Bank Account. You acknowledge that Your Bank Account also includes any bank account that you may designate for payment in the future, and which we verify in writing with you.

**Dates in the Payment Schedule.** You acknowledge that this authorization is an authorization to initiate an electronic debit to Your Bank Account on or after each scheduled Monthly Due Date for so long as amounts are owing by you to us under this Agreement (including additional charges and/or fees incurred under this Note). You authorize us to initiate an electronic debit for any amount owing in connection with your final payment to the extent such amount is less than your monthly payment amount.

**Dates and Amounts Post Maturity Date.** If, on the Maturity Date, any unpaid Debt remains and you do not instruct us to debit the full amount of your outstanding balance on the Maturity Date, then you authorize us to continue to initiate electronic debits to Your Bank Account beyond the Maturity Date on or after the Monthly Due Date in an amount equal to the monthly payment amount $374.34 set forth in your Payment Schedule, or if less, the remaining balance, including fees, charges, and interest, until your obligations are paid in full.

**Dates under any Payment Plan.** You authorize us to initiate electronic debits to Your Bank Account on or after each scheduled payment date, including Monthly Due Dates, for amounts due under any modified payment arrangement as set forth in the **"Other Payment Arrangements"** section under this **Direct ACH Debit** provision. If you default on your obligations under any Payment Plan, you complete your obligations, or we terminate a Payment Plan, then you authorize us to debit Your Bank Account on the dates and in the amounts set forth in your original Payment Schedule in accordance herewith.

**Termination.** You understand and acknowledge that you may terminate this authorization by notifying us via email at support@my.eloan.com or by mail to Avant, as agent for Eloan, ATTN: Compliance Department, 222 N. LaSalle St., Suite 1700, Chicago, Illinois 60601 at least three business days before you wish to terminate this authorization. If an electronic debit is returned to us, we, or our service provider acting on our behalf, may terminate any future recurring electronic debits. If this occurs, you will be responsible for making your payments by some other method acceptable to us.

**Partial Prepayments.** If you make any partial prepayments, then you authorize us to vary the amount of the electronic debit as needed to reflect those partial prepayments. Any partial payment must be received at least 3 business days prior to an electronic debit to ensure an electronic debit amount is varied to reflect such partial payment.

**Additional Amounts.** You further authorize us to initiate single electronic debits for the combined amount of a monthly payment and a late fee that comes due under this Note and separate electronic debits to Your Bank Account for any applicable amounts that come due under this Note, including any Late Fee, on or after the dates they become due. Instead of or in addition to any electronic debits described above, you authorize us to electronically debit Your Bank Account for any amount and on any date that you subsequently confirm by phone, text message or e-mail.

**Other Payment Arrangements.** If we agree, you may enter into a modified payment arrangement that may change certain terms of this Payment Authorization. If you and we agree to change any terms of this Payment Authorization, including the dates or amounts of scheduled monthly payments, all other provisions of this Payment Authorization not changed will remain in full force and effect. Unless otherwise specified in the terms of your modified payment arrangement, if you fail to satisfy your obligations under any payment arrangement, you complete your obligations, or we terminate a payment arrangement,

then you authorize us to debit Your Bank Account on the dates and in the amounts set forth in your Payment Schedule, as it existed immediately prior to the modified payment arrangement, in accordance with this Payment Authorization.

**Authorization to Vary Amounts.** You understand that you have the right to receive written notice if an electronic debit will vary from the amount authorized above. To exercise this right, you must send a written request to us via email at support@my.eloan.com, or by mail at 222 N. LaSalle St., Suite 1700, Chicago, Illinois 60601. Unless you exercise this right, you authorize us to vary the amount of any electronic debit without notice so long as such debit is no more than the amount authorized above.

**Full Force and Effect.** This authorization will remain in full force and effect until we have received written notification from you of its termination in such time and in such manner as required above.

**Error Correction.** In the event we make an error in processing any electronic debit, you authorize us to initiate an electronic debit or credit to Your Bank Account to correct the error. If you believe we have initiated a payment in a manner not contemplated by this authorization, then please contact Avant, as agent for Eloan, at 855-854-9395, or at 222 N. LaSalle St., Suite 1700, Chicago, Illinois 60601.

**Re-Initiation.** You authorize us to re-initiate any electronic debit a total of two additional times (if necessary) for the same amount if the electronic debit is dishonored.

**Optional Electronic Debit Authorization. YOU ARE NOT (AND WERE NOT) REQUIRED TO AGREE TO THIS ELECTRONIC DEBIT AUTHORIZATION TO ENTER A TRANSACTION WITH US. BY SELECTING THIS OPTION, YOU ACKNOWLEDGE THAT YOU ARE VOLUNTARILY CHOOSING TO PAY ELECTRONICALLY.**

__ **Pay By Mail.** You agree to make a payment via paper check, cashier's check, or money order. You can mail your payment to: c/o Eloan Payments, PO Box 809236, Chicago, IL, 60608-9201. Please note that any payment sent via physical means will be effective no later than the day it is received. Please note that post-dated checks are not an acceptable payment method and may not be effective the day they are received.

**4. Prepayment.**

**You may prepay the Debt in whole or in part at any time without penalty.** That is, you will not incur any additional fee or charge for partial prepayment or prepayment in full.

**5. Fees and Charges.**

(a)If a payment is not paid in full within 15 days after its due date, you will be charged 5% of late installment amount.

**6. Re-Initiation Authorization.**

If you choose to make any payment via electronic debit, you authorize us to re-initiate any electronic debit a total of two additional times (if necessary) for the same amount if the electronic debit is dishonored.

**7. Use of Amount Financed.**

You promise that you will use the proceeds of the Loan for consumer purposes and not for any student loan or any illegal purposes.

**8. Breach/Remedies.**

If: (a) you fail to pay any scheduled installment when due; (b) any bankruptcy, receivership or insolvency proceeding is initiated by or against you or you make any assignment for the benefit of creditors; (c) you die; (d) you fail to keep any promise or meet any other obligation in this Note; or (e) we discover that you have made a material misrepresentation, then, subject to applicable law (including any notice or cure right under applicable law), we may declare all Debt under this Note immediately due and payable, exercise any right provided by applicable law and, if the Debt is referred for collection to an attorney who is not a salaried employee of ours, charge you reasonable attorneys' fees permitted by applicable law.

**9. Waivers.**

We may accept late or partial payments, even though marked "paid in full," or with similar language, without losing any of our rights under this Note, and we may delay enforcing any of our rights under this Note without losing them. We do not have to: (a) give notice that amounts due have not been paid ("notice of dishonor"), (b) demand payment of amounts due ("presentment"), or (c) obtain an official certification of nonpayment ("protest"). You hereby waive notice of dishonor, presentment and protest. Even if, at a time when you are in breach, we do not require you to pay immediately in full as described above, we will still have the right to do so if you are in breach at some other time. Neither our failure to exercise any of our rights, nor our delay in enforcing or exercising any of our rights, will waive those rights in whole or in part, regardless of how often we fail or delay in enforcing or exercising such rights.

To the extent allowed by law, no extension of time for payment of any part of the Debt, and no alteration, amendment or waiver of any provision of this Note or any other document or agreement relating to the Debt or this Note shall release, modify, amend, waive, extend, change, discharge, terminate or affect your unconditional liability, and that of any other person or party who may become liable for the payment of all or part of the Debt, unless otherwise agreed between you and us.

**10. Applicable Interest and/or Loan Charge Maximums Will Be Observed.**

Notwithstanding any provision of this Note to the contrary, if any law applicable to this Note or the Debt is finally interpreted so that the interest or other charges or fees collected or to be collected in connection with the Debt or this Note exceed the legally permitted limit, then: (a) any such interest, charge or fee shall be reduced by the amount necessary to reflect and be in compliance with the maximum permitted limit; and (b) any sums already collected, to the extent such sums would otherwise exceed a permitted limit, will be refunded to you. We may choose to make this refund by applying such amounts to your then outstanding Debt by reducing the Debt and/or by making a direct payment to you.

**11. Severability.**

The unenforceability of any provision of this Note shall not affect the enforceability or validity of any other provision of this Note.

## 12. Notices.

Unless otherwise specified, all notices and other communications under this Note shall be given in writing and shall be deemed to have been duly given and effective upon receipt if delivered in person, by recognized messenger service or by facsimile, email or other electronic transmission and upon posting for notices we give you on our website. Any notice or other communication to you may be delivered in accordance with the consent to electronic transactions and communications you have executed (to which this Note is fully subject) or to the address we maintain for you in our records. Any notice to us must be sent to Avant, as agent for Eloan, 222 N. LaSalle St., Suite 1700, Chicago, Illinois 60601 unless a different address for notice is later provided in writing by us to you.

## 13. Assignment.

You may not assign any of your obligations under this Note without our written permission, which we are not required to give. We may assign this Note at any time without your permission. Our transfer may be made by causing a registration of transfer in the record of ownership as described below, without providing you with any other notice (except where such notice is required by applicable law). Your obligations under this Note apply to all of your heirs, successors and permitted assigns, if any. Our rights under this Note apply to us and each of our successors and assigns. Ownership of this Loan Agreement and Promissory Note (and rights hereunder, including with respect to principal and interest) shall be registered in a record of ownership maintained by an entity specifically designated for such purposes. You hereby irrevocably appoint Avant as your agent acting solely for the purpose of maintaining such record of ownership. Any assignment or transfer of, or participation in, this Note (or rights hereunder) will be valid only if and when it is registered in such record of ownership. You shall treat each person whose name is registered in the record of ownership as the owner, assignee or participant, as applicable, for all purposes of this Loan Agreement and Promissory Note, including, but not limited to, the rights to payments of principal and interest. The record of ownership shall be made available to you in a form and manner determined by the agent maintaining it from time to time upon reasonable prior written notice.

## 14. GOVERNING LAW / JURY WAIVER AND OTHER WAIVERS.

**EXCEPT TO THE EXTENT, IF ANY, PROHIBITED BY APPLICABLE LAW, AND EXCEPT AS MAY OTHERWISE BE PROVIDED IN SECTION 21 – "ARBITRATION" BELOW, THIS NOTE AND ALL CONTROVERSIES RELATING TO THIS NOTE ARE GOVERNED BY FEDERAL LAW AND, TO THE EXTENT STATE LAW APPLIES, THE LAW OF THE COMMONWEALTH OF PUERTO RICO. YOU AGREE AND CONSENT TO SUBMIT TO THE JURISDICTION AND VENUE OF THE COURT SELECTED BY US OR THE HOLDER OF THE NOTE IN THE EVENT ANY LEGAL ACTION IS INITIATED FOR THE ENFORCEMENT OF THIS OBLIGATION.**

**YOU ALSO ACKNOWLEDGE AND AGREE THAT IF ANY PARTY ELECTS ARBITRATION PURSUANT TO SECTION 21 – "ARBITRATION" BELOW, YOU WAIVE YOUR RIGHTS, WHICH SUCH WAIVER IS KNOWING AND VOLUNTARY, UNLESS PROHIBITED UNDER APPLICABLE LAW, TO THE FULLEST EXTENT POSSIBLE TO, WITH RESPECT TO ANY CLAIM, DEMAND, CAUSE OF ACTION OR ANYTHING ELSE RELATED TO THIS NOTE:**

    **1. A TRIAL BY A JURY.**

    **2. SERVE AS A PRIVATE ATTORNEY GENERAL OR IN A REPRESENTATIVE CAPACITY.**

## 15. Entire Agreement and Amendment.

This Note represents the entire agreement between you and us regarding the Loan and supersedes all prior or contemporaneous communications, promises or proposals, whether oral, written or electronic, between us with respect to your Loan. Except for orally agreed-upon changes to the payment method and Payment Plan permitted by and made pursuant to Section 3(b), and later confirmed in writing by us, this Note may not be amended, modified or limited except as we may later agree in writing.

## 16. Contacting You; Phone and Text Messages.

Notwithstanding any prior election to opt in or opt out of receiving telemarketing calls or SMS messages (including text messages) from us, our affiliates, agents, assigns and/or service providers, you hereby authorize us and our affiliates, agents, assigns and service providers (collectively, the "Messaging Parties") to contact you using manual calling methods, automatic telephone dialing systems, artificial or prerecorded voice message systems, text messaging systems and automated email systems, in accordance with applicable law, in order to provide you with information about this Note and the Debt, including information about upcoming payment due dates, missed payments and returned payments. You authorize the Messaging Parties to make such contacts using any telephone numbers (including wireless, landline and VOIP numbers) or email addresses you supply to the Messaging Parties in connection with your Loan application, the Messaging Parties' servicing and/or collection of amounts you owe the Messaging Parties or any other matter. You understand that anyone with access to your telephone or email account may listen to or read the messages the Messaging Parties leave or send you, and you agree that the Messaging Parties will have no liability for anyone accessing such messages. You further understand that, when you receive a telephone call, text message or email, you may incur a charge from the company that provides you with telecommunications, wireless and/or Internet services, and you agree that the Messaging Parties will have no liability for such charges. You expressly authorize the Messaging Parties to monitor and record your calls with the Messaging Parties. To stop commercial advertising or promotional emails, you can follow the optout instructions included at the bottom of the Messaging Parties' emails.

## 17. Credit Reports and Monitoring.

NOTICE OF FURNISHING NEGATIVE INFORMATION. WE MAY REPORT INFORMATION ABOUT YOUR ACCOUNT TO CREDIT BUREAUS. LATE PAYMENTS, MISSED PAYMENTS, OR OTHER DEFAULTS ON YOUR ACCOUNT MAY BE REFLECTED IN YOUR CREDIT REPORT. WE MAY OBTAIN CREDIT REPORTS ON YOU ON AN ONGOING BASIS UNTIL THIS NOTE IS PAID IN FULL.

YOU UNDERSTAND AND AGREE THAT BANCO POPULAR DE PUERTO RICO, AND AVANT, AS AGENT FOR ELOAN, MAY OBTAIN CONSUMER REPORTS AND RELATED INFORMATION ABOUT YOU FROM ONE OR MORE CONSUMER REPORTING AGENCIES THROUGHOUT THE TERM OF YOUR LOAN, INCLUDING IN THE MONTH FOLLOWING THE MONTH WHEN YOU PAY OFF OR OTHERWISE SATISFY THE LOAN. YOU EXPRESSLY AUTHORIZE THE USE OF THE INFORMATION OBTAINED FROM SUCH REPORTS TO, AMONG OTHER THINGS, MARKET REFINANCINGS AND OTHER PRODUCTS TO YOU, MAKE DECISIONS RELATED TO THE SERVICING AND COLLECTION OF YOUR ACCOUNT, MEASURE HOW THE LOAN YOU OBTAINED IMPACTS YOUR CREDIT, PERFORM OTHER STATISTICAL ANALYSIS AND SHARE INFORMATION WITH YOU ABOUT YOUR CREDIT PROFILE.

## 18. Credit Bureau Disputes.

If you believe we have inaccurately reported information about you or this Note to a credit reporting agency, contact us by communicating with Avant, as agent for Eloan, at 855-854-9395 or send an email to us at support@myeloan.com. You will need to provide your Loan Number along with a copy of your credit bureau report reflecting the information that you believe is inaccurate. If you believe that you have been the victim of identity theft, submit an identity theft affidavit or identity theft report to idtheft@my.eloan.com.

**19. Bankruptcy.**

You promise that you are not a debtor under any proceeding in bankruptcy, have not consulted a bankruptcy attorney in the past six months and have no current intention of filing a petition for relief under the United States Bankruptcy Code. If you file for bankruptcy under the United States Bankruptcy Code, you must contact us in writing and include your Loan Number by communicating with Avant, as agent for Eloan, at 222 N. LaSalle St., Suite 1700, Chicago, Illinois 60601, Attn: Bankruptcy Notice.

**20. Non Negotiable Instrument.**

This Note is not a negotiable instrument.

**21. Arbitration Provision.**

| Arbitration of Disputes | **THIS AGREEMENT CONTAINS AN ARBITRATION PROVISION IMMEDIATELY BELOW. WITHIN 90 DAYS AFTER THE DATE YOU SIGN THIS AGREEMENT, YOU MAY ELECT TO REJECT THE ARBITRATION PROVISION BY PROVIDING A WRITTEN NOTICE OF YOUR INTENTION TO DO SO TO THE ADDRESS: LEGAL DIVISION (745), BANCO POPULAR DE PUERTO RICO, P.O. BOX 362708, SAN JUAN, PUERTO RICO 00936-2708. UNLESS YOU SUBMIT YOUR REJECTION OR TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE ARBITRATION PROVISION WILL HAVE A SUBSTANTIAL IMPACT ON HOW ANY CLAIMS WE HAVE AGAINST EACH OTHER ARE RESOLVED IF EITHER YOU OR WE ELECT ARBITRATION. FOR EXAMPLE, DISPUTES SUBJECT TO ARBITRATION ARE DECIDED BY A NEUTRAL ARBITRATOR AND NOT A JUDGE OR JURY. ALSO, IF YOU OR WE ELECT ARBITRATION, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO PARTICIPATE IN A CLASS ACTION, EITHER IN COURT OR IN ARBITRATION. THIS ARBITRATION PROVISION WILL NOT APPLY TO, OR BE ENFORCEABLE AGAINST, COVERED BORROWERS UNDER THE PROTECTION OF THE MILITARY LENDING ACT.** |
|---|---|

**IMPORTANT WAIVERS: IF YOU OR WE ELECT TO ARBITRATE A CLAIM, YOU AND WE BOTH KNOWINGLY AND VOLUNTARILY WAIVE THE RIGHT TO: (1) HAVE A COURT OR A JURY DECIDE THE CLAIM; (2) PARTICIPATE IN A CLASS ACTION IN COURT OR IN ARBITRATION, WHETHER AS A CLASS REPRESENTATIVE, CLASS MEMBER OR OTHERWISE, OR ACT AS A PRIVATE ATTORNEY GENERAL IN COURT OR IN ARBITRATION (THE "CLASS ACTION WAIVER"); (3) JOIN OR CONSOLIDATE CLAIM(S) WITH CLAIMS INVOLVING ANY OTHER PERSON OR (4) OBTAIN INFORMATION EXCEPT AS PROVIDED HEREIN. OTHER RIGHTS ARE MORE LIMITED IN ARBITRATION THAN IN COURT OR ARE NOT AVAILABLE IN ARBITRATION. DEFINITIONS – In this Arbitration Provision, the following definitions will apply:**

**"Administrator"** means, as applicable, the **American Arbitration Association (the "AAA")** or **J.A.M.S./Endispute ("JAMS")** or if the AAA and JAMS cannot or will not serve, an arbitration administrator agreed-upon by the parties or appointed by a court, provided that the Administrator must not have in place a formal or informal policy that is inconsistent with and purports to override the terms of this Arbitration Provision. You may select the Administrator when you give written notice of an election to arbitrate a Claim or within 20 days after we give such a written notice. Otherwise, we will select the Administrator.

**"Claim"** means any legal claim, dispute or controversy between you and us that arises from or relates in any way to this Agreement or the Loan including: (i) the fees or charges we or other parties impose in connection with this Agreement or the Loan or the other provisions of this Agreement; (ii) the interest, if any, paid on the Loan; (iii) any application, disclosure or other document relating in any way to this Agreement; (iv) any service or product offered or made available by or through us in connection with this Agreement, including any associated fees, charges, terms or disclosures; and (v) any documents, instruments, advertising or promotional materials that contain information about this Agreement or the Loan, or any other such service or product; and (vi) the relationships resulting from any of the foregoing. This includes, without limitation, disputes involving alleged fraud or misrepresentation, breach of contract, negligence or violation of statute, regulation or common law; and disputes involving requests for injunctions or other equitable relief. However, "Claim" does not include: (a) any individual action brought by you in small claims court or your state's equivalent court, unless such action is transferred, removed or appealed to a different court; (b) any dispute or controversy about the validity, enforceability, coverage or scope of this Arbitration Provision or any part thereof (including, without limitation, the Class Action Waiver set forth below, subparts (A) and (B) of the part set forth below titled "Survival, Primacy, Severability" and/or this sentence); all such disputes or controversies are for a court and not an arbitrator to decide (but any challenge to this Agreement as a whole is for an arbitrator and not a court to decide); or (c) any exercise by us of our right to off-set against the amounts you owe us with the amounts you have on deposit with us or any proceeding by you to enjoin the exercise of such right.

**STARTING ARBITRATION** – To initiate arbitration, you or we must give written notice of an election to arbitrate. This notice may be given after a lawsuit has been filed and may be given in papers or motions in the lawsuit, such as a motion to compel arbitration. Even if all parties have opted to litigate a Claim in court, you and we may elect arbitration with respect to any Claim made by a new party or any Claim later asserted by a party in that or any related or unrelated lawsuit (including a Claim initially asserted on an individual basis but modified to be asserted on a class, representative or multi-party basis). Nothing in that litigation shall constitute a waiver of any rights under this Arbitration Provision If notice of an election to arbitrate is given, the Claim shall be resolved by arbitration under this Arbitration Provision and the applicable rules of the Administrator then in effect. The arbitrator will be selected under the Administrator's rules, except that the arbitrator must be a lawyer with at least 10 years of experience or a retired judge, unless you and we agree otherwise.

**LOCATION AND COSTS** – Any arbitration hearing that you attend will take place in a location that is reasonably convenient to you. We will consider (and generally honor) any good faith request to bear the fees charged by the Administrator and the arbitrator(s). Each party shall pay its own expenses; provided, if we lose, we will also pay all fees charged by the Administrator and the arbitrator(s) and all reasonable fees of your attorneys. In all cases, we will pay all fees and costs (including attorneys' fees) we are required to bear under applicable law and/or in order for us to enforce this Arbitration Provision.

**DISCOVERY; GETTING INFORMATION** – Either party may obtain from the other party prior to the hearing any information available

under the Administrator's rules or any information the arbitrator determines should be made available.

**EFFECT OF ARBITRATION AWARD** – Any court with jurisdiction may enter judgment upon the arbitrator's award. The arbitrator's award will be final and binding, except for: (1) any appeal right under the Federal Arbitration Act, 9 U.S.C. §§1 et seq. (the "FAA"); and (2) Claims involving more than $50,000. For Claims involving more than $50,000, any party may appeal the award to a three-arbitrator panel appointed by the Administrator, which will reconsider de novo any aspect of the initial award that is appealed. The panel's decision will be final and binding, except for any appeal right under the FAA.

**GOVERNING LAW** – This Arbitration Provision is made pursuant to a transaction involving interstate commerce and shall be governed by the FAA, and not by any state law concerning arbitration, provided that the law of New York shall be applicable to the extent that any state or territorial law is relevant in determining the enforceability of this Arbitration Provision under Section 2 of the FAA. The arbitrator shall follow applicable substantive law to the extent consistent with the FAA, applicable statutes of limitation and applicable privilege rules, and shall be authorized to award all remedies that would apply under applicable law to an individual action brought in court, including, without limitation, compensatory, statutory and punitive damages (subject to constitutional limits that would apply in court), declaratory, injunctive and other equitable relief (but only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim), and attorneys' fees and costs. Upon the timely request of either party, the arbitrator shall write a brief explanation of the basis of his or her award. The arbitrator will follow rules of procedure and evidence consistent with the FAA, this Arbitration Provision and the Administrator's rules.

**SURVIVAL, SEVERABILITY, PRIMACY** – This Arbitration Provision shall survive termination, of your Loan; our sale or transfer of our rights under this Agreement; any legal proceeding or set-off to collect a debt owed by you; or any bankruptcy or insolvency. In the event of any conflict or inconsistency between this Arbitration Provision and the Administrator's rules or this Agreement, this Arbitration Provision will govern. If any portion of this Arbitration Provision cannot be enforced in a proceeding between you and us, the rest of the Arbitration Provision will continue to apply, except that: (A) the entire Arbitration Provision (except for this sentence) shall be null and void if the class action waiver is held to be invalid regarding any class or representative Claim in a proceeding between you and us, subject to any right to appeal such holding, and (B) if a Claim is brought seeking public injunctive relief and a court determines that the restrictions in the class action waiver or other parts of this Arbitration Provisions prohibiting the arbitrator from awarding relief on behalf of third parties are unenforceable with respect to such Claim (and the determination becomes final after all appeals have been exhausted), the Claim for public injunctive relief will be determined in court and any individual Claims seeking monetary relief will be arbitrated. In such a case the parties will request that the court stay the Claim for public injunctive relief until the arbitration award pertaining to individual relief has been entered in court. In no event will a Claim for class-wide relief or for public injunctive relief be arbitrated.

**BREACH OF ARBITRATION AGREEMENT** – If either party fails to submit to arbitration following a proper demand to do so, that party shall bear all costs and expenses, including reasonable attorneys' fees, incurred by the other party in seeking to compel arbitration.

---

**Contacting Arbitration Administrators**

If you have a question about the arbitration administrators mentioned in this Arbitration Provision or would like to obtain a copy of their Arbitration Rules or fee schedules, you can contact them as follows: American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019, www.adr.org, (800) 778-7879. Commercial or Consumer Rules, J.A.M.S./Endispute, 222 South Riverside Plaza, Suite 1850, Chicago, IL 60606; www.jamsadr.com (800) 352-5267, Financial Services Arbitration Rules and Procedures.

---

**22. State Notices and Special Provisions.**

**All Borrowers, including California / Connecticut / New York / Rhode Island / Utah / Vermont Residents**

You give us and our agents, successors, and assigns permission to access your credit report in connection with any transaction, or extension of credit, and on an ongoing basis, for the purpose of reviewing this Note, taking collection action on this Note, or for any other legitimate purposes associated with this Note. Upon your request, you will be informed of whether or not a consumer credit report was ordered, and if it was, you will be given the name and address of the consumer reporting agency that furnished the report. As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

**All Borrowers, including Iowa / Kansas / Maine / Missouri / Nebraska / Oregon / Texas / Utah / Washington Residents**

**IMPORTANT: READ CAREFULLY BEFORE SIGNING: ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT, INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT, ARE NOT ENFORCEABLE. TO PROTECT YOU (BORROWER) AND US (CREDITOR) FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY.**

**All Borrowers, including Iowa, Kansas and Wisconsin Residents**

**NOTICE TO CONSUMER:**

**1. Do not sign this Contract before you read it.**

**2. Do not sign this Contract if it contains any blank spaces.**

**3. You are entitled to a copy of this Contract.**

**4. You may prepay the unpaid balance at any time without penalty and may be entitled to receive a refund of unearned charges in accordance with law.**

**All Borrowers, including Colorado Residents**

This Note is fully subject to your consent to electronic transactions and communications, which consent has been separately provided. Before signing this Note or otherwise committing to the Loan, you may download and print copies of these documents and keep them for your review.

### Arizona Residents

**Notice to Arizona Borrowers: You may request that the initial disclosures prescribed in the Truth in Lending Act (15 United States Code §§ 1601 through 1666j) be provided in Spanish before signing any loan documents.**

**Aviso a solicitantes de préstamos en Arizona: Tiene el derecho de solicitar la declaración de divulgación inicial prescribida en la legislación de Veracidad de Crédito (Truth in Lending Act15 United States Code §§ 1601 through 1666j) en español antes de firmar cualquier documento de préstamo.**

### California Residents

A married applicant may apply for a separate account.

### Florida Residents

You agree that, should we obtain a judgment against you, a portion of your disposable earnings may be attached or garnished (paid to us by your employer), as provided by Florida and Federal law.

### Maryland Residents

To the extent, if any, that Maryland law applies to this Note, we elect the Credit Grantor Closed-End Credit Provisions in Title 12, Subtitle 10 of the Maryland Commercial Law Code as the applicable Maryland law.

### Massachusetts Residents

Massachusetts law prohibits discrimination based upon marital status or sexual orientation.

### New Hampshire Residents

You shall be awarded reasonable attorney's fees if you prevail in any legal action you bring against us or we bring against you. If you successfully assert a partial defense, set-off or counterclaim against us in an action we bring against you, the court or arbitrator may withhold from us the entire amount or such portion of the attorney's fees as it considers equitable.

### New Jersey Residents

Because certain provisions of this Note are subject to governing law, they may be void, unenforceable or inapplicable in some jurisdictions. None of these provisions are void, unenforceable or inapplicable within New Jersey.

### Ohio Residents

The Ohio laws against discrimination require that all creditors make credit equally available to all creditworthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

### Married Wisconsin Residents

If you are married: (1) You confirm that the Loan is being incurred in the interest of your marriage or family. (2) No provision of any marital property agreement, unilateral agreement, or court decree under Wisconsin's Marital Property Act will adversely affect a creditor's interest unless prior to the time credit is granted, the creditor is furnished a copy of that agreement or decree or is given complete information about the agreement or decree. (3) You understand and agree that we will provide a copy of this Note to your spouse for his or her information.

**BY CONSIDERING AND TAKING ACTION ON YOUR APPLICATION FOR THE LOAN, WE AGREE TO THE TERMS OF THIS NOTE, INCLUDING THE ARBITRATION PROVISION.**

**BY CLICKING THE BUTTON BELOW READING "I AGREE," YOU ACKNOWLEDGE THAT YOU HAVE RECEIVED AND HAVE READ A COMPLETED COPY OF THIS NOTE, INCLUDING THE ARBITRATION PROVISION.**

| **CAUTION—IT IS IMPORTANT THAT YOU THOROUGHLY READ THE AGREEMENT BEFORE YOU SIGN IT.** | **NOTICE TO BORROWER** |
|---|---|
| | **(a) DO NOT SIGN THIS NOTE BEFORE YOU READ THE WRITING ABOVE, EVEN IF OTHERWISE ADVISED.** |
| | **(b) DO NOT SIGN THIS NOTE IF IT CONTAINS ANY BLANK SPACES.** |
| | **(c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.** |
| | **(d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS NOTE.** |

**[I AGREE]**

**Customer Signature:**
Name: SEBASTIAN OCADIZ CASTRO
Last 4 SSN: 2446
Signed At: March 02, 2020 15:03
Customer ID: 1834810
**SIGNATURE: dac3787118b139def3147fffb744e457a44c1181**

EXHIBIT C

EXHIBIT C

I Manuel Ivan Cordova-Curiel am in the process of purchasing a 2004 Lexus IS300 with VIN # JTHBD192X40086963 from Sebastian Ocadiz-Castro in the amount of $4500.

Payments will be been made as follows:

| | |
|---|---|
| **June 1, 2020** | **$2,200** |
| **June 22, 2020** | $720 |
| **July 25, 2020** | $800 |
| **August 7, 2020** | $780 |

**Total** $4500.00

Manuel Ivan Cordova-Curiel
3564 Malafia Cir.
Las Vegas, NV 89103
725-266-3108

EXHIBIT D

EXHIBIT D



**555 WRIGHT WAY**
CARSON CITY, NV 89711-0700
Reno/Sparks/Carson City (775) 684-4DMV (4368)
Las Vegas Area (702) 486-4DMV (4368)
Rural Nevada or Out of State (877) 368-7828
www.dmvnv.com

## BILL OF SALE
NRS 482.426

A Bill of Sale releases interest in a vehicle. A Certificate of Title or other ownership documents must accompany this form.

**INSTRUCTIONS**
- All areas must be completed in full.
- Complete the buyer area exactly as the new Certificate of Title will be printed.
- Any alterations or erasures will require additional documentation and/or verification.

*Please print or type*

**Know all men by these presents**

That in consideration of ___Angel Cordoba___
and other value consideration, the receipt whereof is hereby acknowledged, the undersigned (seller) does hereby sell, transfer and deliver unto: ___ Dollars ($ 7,000)

**New Owner information** (if more than two owners, complete and attach an additional Bill of Sale (VP104) form; indicate "AND" or "OR" between second and third owners)

Full Legal Name of 1st Buyer _____

| First | Middle | Last | ☐ and |
| | | | ☐ or |

Nevada Driver's License, Identification Card Number, Date of Birth, or FEIN for businesses _____

Physical Address _____
Address

Mailing Address __1492 N. Lamb Blvd__  __Las Vegas__  __NV__  __89110__
Address      City      State    Zip Code

Full Legal Name of 2nd Buyer _____
Address      City      State    Zip Code

Nevada Driver's License, Identification Card Number, Date of Birth, or FEIN for businesses _____

First      Middle      Last

Physical Address _____
Address      City      State    Zip Code

Mailing Address _____
Address      City      State    Zip Code

Buyer's Signature _____
Note: only one signature is required even if "AND" appears between the new owner's names      City      State    Zip Code      Date _____

Telephone __702-824-7363__      E-mail _____

his right, title and interest in and to the following described vehicle:

Vehicle Identification Number

| 5 | G | T | D | N | 1 | 3 | 6 | 8 | 8 | 3 | 2 | 5 | 9 | 2 | 7 |

Year __2006__      Make __HUMM__      Model __H3__

☐ This vehicle has been Rebuilt as the term is defined in NRS 482.098

uyer certifies Lien in favor of _____
liens exist, write the word "NONE" on the "Lien in favor of" line

evada Driver's License, Identification Card Number, Date of Birth, or FEIN businesses _____

ess _____
Address      City      State    Zip Code

certifies that he is the lawful owner of said vehicle; that he has the right to sell the aforesaid; and that he will warrant end the title of same against the claims and demands of all persons whomever except lienholder noted above.

Full Legal Name __Sebastian__      __acadiz-castro__
First      Middle      Last

Driver's License, Identification Card Number, Date of FEIN for businesses _____

ddress __8193 Trasorp Falls Ave__      __LV__      __NV__    __89178__
Address      City      State    Zip Code

of Seller _____      Date __07/12/20__

Sold · **2006 Hummer H3**

$8,000

Vehicles

Listed 4 days ago in Las Vegas, NV

### About This Vehicle ✏️ Edit

- Driven 175,000 miles
- Automatic transmission
- Exterior color: Blue · Interior color: Black
- Fuel type: Gasoline

### Seller's description

1 owner clean title 06 H3 175,000 slightly going up waiting to get my other car from the shop. Car ... **See More**

**Las Vegas, NV**
Location is approximate

### Seller Information

**Sebastian Ocadiz Castro**
Joined Facebook in 2013

**Mark as Available**

# EXHIBIT E

# EXHIBIT E



**drsebbieautodetail**

| **4** | **20** | **15** |
|---|---|---|
| Posts | Followers | Following |

**Sebastian Ocadiz**
Product/Service
Call or text 702-587-7529 to set up your appointment from 8am-6pm
Starting prices on interior&exterior $30 regular sedans-$50 Suv's and Trucks

Follow    Message    Email







# EXHIBIT F

# EXHIBIT F


Sebastian

Menkaure · Jordan's



MORE ACTIONS

Search in Conversation

Edit Nicknames

Change Theme

Change Emoji

PEOPLE

Add People


Menkaure Muse

Menkaure Muse

Aren't those some choice kicks. 👀 Can I get see the cdp 15s and the Wt4s.

Now, let me ask what you got size 10?

Yeah bros the cdp is Ds

Nothing in a 10 bros

The 4s are 11

15s are 10.5













## Mike · Jordan's

**MORE ACTIONS**

Search in Conversation

Edit Nicknames

Change Theme

Change Emoji

**PEOPLE**

+ Add People

 Mike Gambino

 Sebastian Ocadiz Castro

Size 11 2015 pirate black $800 9/10
Size 11 retro red carpets $180 9/10

No trades,pm for more pics all shoes have
original everything except cdp 15 has rep Jordan
box

SUN 5:53 PM



Mike Gambino

Could you send me the picture of the line up
again



Quanie · Jordan's

Sebastian

Quanie · Jordan's

Size 11 Ds 5lab3 $300
Size 10.5 Ds cdp15 $125
Size 11 Ds hazelnut $300
Size 11 black cat 4 $180 9/10
Size 11 new release fire red 5 $180 9/10
Size 10.5 Red Devils $200 9/10
Size 11 Sbb 3.0 $300 9/10
Size 11 2012 bred 11 $350 9/10
Size 11 wt4 $180 9/10
Size 11 unite 3s $180 vvvnndss literally wore em
for 30-40 minutes
Size 11 2019 infrared 6s $200 vnds
Size 11 yellow v2 $300 9/10
Size 11 laser 4 vnds also $280
Size 11 USA blue AirMax $350
Size 11 2015 pirate black $800 9/10
Size 11 retro red carpets $180 9/10

Quanie Bangbee

What about the yeezys?

There both listed 9

Yellow ones @ $300 and pirate black @ 800

Type a message, @name...

### MORE ACTIONS

Search in Conversation

Edit Nicknames

Change Theme

Change Emoji

### PEOPLE

Add People

Quanie Bangbee

Sebastian Ocudiz Castro









Girard · Jordan's



Size 11 Ds 5lab3 $300
Size 10.5 Ds cdp15 $125
Size 11 Ds hazelnut $300
Size 11 black cat 4 $180 9/10
Size 11 new release fire red 5 $180 9/10
Size 10.5 Red Devils $200 9/10
Size 11 Sbb 3.0 $300 9/10
Size 11 2012 bred 11 $350 9/10
Size 11 wr4 $180 9/10
Size 11 unite 3s $180 vvvndss literally wore em for 30-40 minutes
Size 11 2019 infrared 6s $200 vnds
Size 11 yellow v2 $300 9/10
Size 11 laser 4 vnds also $280
Size 11 USA blue AirMax $350
Size 11 2015 pirate black $800 9/10
Size 11 retro red carpets $180 9/10

No trades,pm for more pics all shoes have original everything except cdp 15 has rep Jordan box

SUN 10:05 AM

## Girard · Jordan's

### MORE ACTIONS

Search in Conversation

Edit Nicknames

Change Theme

Change Emoji

### PEOPLE

Add People

Girard Rey

Sebastian Ocadiz Castro

Girard Rey
Thank you



Menkaure · Jordan's



Menkaure · Jordan's

Sebastian

Menkaure Muse

What do you have in an 11?.

SUN 6:54 AM

Size 11 Ds 5lab3 $300
Size 10.5 Ds cdp15 $125
Size 11 Ds hazelnut $300
Size 11 black cat 4 $180 9/10
Size 11 new release fire red 5 $180 9/10
Size 10.5 Red Devils $200 9/10
Size 11 Sbb 3.0 $300 9/10
Size 11 2012 bred 11 $350 9/10
Size 11 wrt4 $180 9/10
Size 11 unite 3s $180 vvvnndss literally wore em
for 30-40 minutes
Size 11 2019 infrared 6s $200 vnds
Size 11 yellow v2 $300 9/10
Size 11 laser 4 vnds also $280
Size 11 USA blue AirMax $350
Size 11 2015 pirate black $800 9/10
Size 11 retro red carpets $180 9/10

No trades,pm for more pics all shoes have
original everything except cdp 15 has rep Jordan
box

Almost everything

MORE ACTIONS

Search in Conversation

Edit Nicknames

Change Theme

Change Emoji

PEOPLE

+ Add People

  Menkaure Muse

Sebastian Ocadiz Castro

Type a message, @name...








# EXHIBIT G

# EXHIBIT G

**July 21st 2020**

**To Whom t May Concern:**

**I am honored to write a reference letter for my coworker Sebastian Ocadiz Castro.**

**I had the opportunity to work with him at Denny's Restaurant (while I was there as a General Manager 2017 & 2018).**

**Also at IHOP Restaurant located at 7490 S Las Vegas Boulevard, NV in 2019**

**Sebastian was and an extraordinary employee his role as a server exceeded our expectations. Always on point on his performance and always giving the "extra mile" to help our team.**

**Luis Rodolfo Castanon Nava**

**702)327-3535**

Luis Rodolfo Castanon Nava

EXHIBIT H

EXHIBIT H